(90 South. 406)

No. 24929.

## STATE v. PERRY.

(Nov. 28, 1921.    Rehearing Denied Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Indictment and information** ⬳137(1)—**Motion to quash on ground accused not warned before answering incriminating questions before grand jury properly refused.**

Where a bank cashier, who was indicted for receiving deposits knowing the bank to be insolvent, agreed to testify before the grand jury against another, whom he considered responsible for the bank's failure, after being told by his attorney, in the presence of the district attorney and others, that there was no hope for him, the court properly overruled his motion to quash the affidavit on the ground he was compelled to testify against himself without warning that he might decline to answer incriminating questions, even if the indictment had been found on his testimony, and whether or not the deputy sheriff, who brought him from the jail to the grand jury, told him he was bound to go.

2. **Grand jury** ⬳41—**Evidence as to what took place in grand jury room improper.**

In a criminal prosecution, evidence that the district attorney and the special counsel for the state participated in the deliberations of the grand jury and advised them on questions of fact and as to what bills of indictment they should return should have been excluded, as penetrating the secrecy of the grand jury room.

3. **Indictment and information** ⬳137(3) — **That district attorney and special counsel for state appeared before grand jury held no ground for quashing indictment.**

In a prosecution of a bank cashier for receiving deposits knowing the bank to be insolvent, the court properly refused to quash the indictment on the ground the district attorney and special counsel for the state participated in the deliberations of the grand jury and advised them on questions of fact, where neither the district attorney nor special counsel were present during the deliberations, the latter appeared only as a witness to assist in the cases of other parties implicated in the bank's failure, and the district attorney's advice was only as to which of the charges was most clearly made out.

4. **Indictment and information** ⬳137(2)— **That members of grand jury lost money in failure of bank, deposits in which defendant was accused of unlawfully receiving, no ground for quashing indictment.**

That four members of the grand jury, including the foreman, were interested in the failure of a bank, deposits in which defendant, as cashier, was accused of receiving knowing it to be insolvent, and a number of other jurors, drawn for the grand and petit jury, lost money in such failure, was not ground for quashing the indictment, where the evidence showed the grand jury was drawn to inquire generally of offenses throughout the parish, and that no effort was made to pack it against accused.

5. **Indictment and information** ⬳137(1)— **That jury commissioner lost money because of defendant's crime held no ground for quashing indictment.**

That a member of the jury commission which drew the grand jury which returned an indictment against a bank cashier for receiving deposits, knowing the bank to be insolvent, lost money in the bank's failure, was not a ground for quashing the indictment, where the evidence showed that, because of the illness of two of the commissioners, he had to serve, and that the drawing was done with perfect fairness.

6. **Criminal law** ⬳1166(4)—**Change of venue properly refused where fair and impartial jury obtained.**

Bill of exceptions to refusal to grant change of venue was without merit where the evidence showed that a fair and impartial jury could be obtained in the parish, and such a jury was obtained without accused having had to exhaust his peremptory challenges.

7. **Jury** ⬳116—**Talesman's statement that he had never heard it disputed that accused was guilty held no ground for setting aside panel as already completed.**

That a tales juror, when asked whether he had formed an opinion as to accused's guilt or innocence, answered, in the presence of eleven jurors already selected, that he had never heard it disputed that accused was guilty, would not have justified setting aside the panel so far as completed, even if the purpose of the answer had been ulterior, especially where the trial judge remedied the situation as far as possible by proper instruction to the jury.

**8. Criminal law ⬤⟿400(8)—Expert account-ant's testimony that bank was insolvent when accused cashier received deposit held ad-missible.**

In a prosecution of a bank cashier for re-ceiving deposits knowing the bank was insol-vent, testimony of an expert accountant, who examined the books of the bank that it was insolvent when the deposit in question was received was properly admitted as against the objection that the books were the best evi-dence.

**9. Criminal law ⬤⟿1171(1)—District attor-ney's statement that he had given defendant every opportunity to prove innocence held harmless.**

In a criminal prosecution, a statement of the district attorney in his argument that he had given defendant every opportunity to prove his innocence *held* harmless, being merely argu-mentation.

**10. Criminal law ⬤⟿918(1)—Applause by au-dience at conclusion of attorney's argument held not ground for new trial.**

A motion for new trial on the ground that the audience applauded at the conclusion of the argument of counsel for the state was properly overruled, where the judge suppressed the ap-plause at once, and warned the jury not to allow themselves to be influenced by it.

Appeal from Second Judicial District Court, Parish of Bossier; Robert Roberts, Jr., Judge.

Jonas Perry was convicted of having re-ceived deposits in the bank of which he was cashier, knowing it to be insolvent, and he appeals. Affirmed.

Thomas W. Robertson, of Shreveport, for appellant.

A. V. Coco, Atty. Gen., and R. H. Lee, Dist. Atty. of Minden (Paul A. Sompayrac, of New Orleans, Barnette & Roberts, of Shreve-port, and J. S. Walmsley, of New Orleans, of counsel), for the State.

PROVOSTY, J. On indictment of having received deposits in the bank of which he was cashier, knowing the bank to be insol-vent, the defendant was convicted, sentenced to nine to ten years at hard labor, and has appealed.

The first bill of exception is to the over-ruling of his motion to quash based on the grounds following:

"First. That accused was compelled to testify against himself before the grand jury without any warning being given him that he might de-cline to answer incriminating questions.

"Second. That the district attorney and also the special counsel for the state participated in the deliberations of the grand jury and advised them on questions of fact and as to what bills of indictment they should return against ac-cused.

"Third. That the jury venires which served in defendant's case were illegally drawn and constituted, because S. H. Cochran, a member of the jury commission, and whose presence made a quorum of said commission, lost more than $18,000 in the said bank failure charged to accused, assisted the prosecution in securing the evidence, engaged private counsel for the prosecution, and paid them; further, that four members of the grand jury which actually found the bills were interested in the said bank failure, and that one of them, G. G. Allen, was foreman of the grand jury; that a number of other jurors drawn, both for the grand and petit jury, lost money in the said bank failure and were interested in said prosecution."

For overruling this motion the learned trial judge assigned the following reasons:

"The defendant being carried before the grand jury was the result of his having pre-viously expressed to the district attorney a willingness and a desire to procure the indict-ment of others said to be implicated in wreck-ing the bank. Accused was assured that the sole purpose of his appearance was to enable the grand jury to obtain information connect-ing others with the wrecking of the bank, which information was obtainable only from accused. The examination of accused was for the purpose of trying to indict others and touched his own case incidentally. The intel-ligence of accused precludes the idea that required any special warning as to his constitu-tional privileges to decline to answer questions that might tend to incriminate him.

"As to the objection that S. H. Cochran, who was president of the bank and active in the prosecution, had abused his membership on the jury commission to pack the grand and petit jury against the accused, the court will

state that, owing to the illness and absence of two jury commissioners, Mr. Cochran's participation was necessary in order to constitute a quorum for the drawing of the jury. Knowing the very high character of Mr. Cochran and from his testimony the court is convinced that Mr. —— made no effort to pack either the grand or the petit jury to the prejudice of defendant.

"The fairness, impartiality, and high character of Mr. Cochran was attested by defendant's counsel during the trial of the case by the fact that without previous consultation Mr. Cochran was called to the witness chair on the question of defendant's previous good character by defendant's counsel."

[1] Accused, being desirous of incriminating a certain person whom he considered to have been responsible for the bank's failure, agreed to go before the grand jury and otherwise give every assistance to the prosecution. This he did after his attorney had told him, in the presence of the district attorney and several other witnesses, that there was no hope for him. This was several days before the meeting of the grand jury. When the time came for him to appear before the grand jury, a deputy sheriff went to the jail to fetch him. He and a friend of his say that he inquired of this officer if he was bound to go, and that the officer answered that the grand jury demanded his presence and that he was bound to go. The officer does not remember whether there was such a conversation or not. We do not see that it would make any difference that there was. Nothing shows that the indictment was found on the testimony of accused. Indeed, it is not pretended that it was. As a matter of fact, the guilt of accused appeared sufficiently from the books of the bank taken in connection with the fact that he was the cashier of the bank. The indictment of accused was a foregone conclusion. His appearance before the grand jury was on the case against the other parties sought to be indicted, not upon his case. And, even if the indictment had been found upon his testimony, it would not be possible, under the circumstances, to say that he had been compelled to testify against himself, since his testimony was entirely voluntary.

[2, 3] The next ground of the motion to quash has no greater merit. The learned trial judge should have excluded all evidence attempted to be offered for penetrating the secrecy of the grand jury room to show what had there taken place. The evidence, however, such as it is, shows that neither the district attorney nor the special counsel was present during the deliberations; that the special counsel appeared only as a witness duly sworn and only to assist the grand jury in the cases of the other parties implicated in the bank failure; and that the advice of the district attorney, in so far as bearing on the facts of defendant's case, was only as to which one of the charges was most clearly made out by the evidence and was best to be adopted as the basis of the indictment. There was no harm in the jury seeking advice from their legal adviser on this point.

[4] The third ground is equally without merit. The evidence shows that this particular grand jury was drawn like every other grand jury to inquire generally of offenses throughout the parish, and by no means specially for inquiry into this bank failure, and that, far from any effort having been made to pack the grand jury against accused, several persons who would otherwise have been chosen on the venire were excluded because they had been depositors in the bank and had lost their deposits as the result of the failure of the bank.

[5] So far as Mr. Cochran's having served as one of the jury commissioners in drawing the venire is concerned, the facts are that, owing to the inability of two of the commissioners to serve because of illness, he had to serve or else no jury be drawn, and that the drawing was done with perfect fairness.

[6] The second bill of exception was taken to the refusal to grant a change of venue. The motion was based on the ground of its being impossible to secure a fair and impartial jury in the parish owing to the prejudice which the failure of the bank had produced against accused throughout the parish.

Rehashing here the testimony taken on the trial of this motion would serve no useful purpose. It shows that a fair and impartial jury could be obtained; and subsequent events proved the correctness of that view, since a fair and impartial jury was obtained for the trial of the case without the accused having had to exhaust his peremptory challenges.

[7] The third bill was taken to the refusal to discharge eleven jurors who had already been selected, when, in their presence and hearing, a tales juror, to the question whether he had formed or expressed an opinion as to the guilt or innocence of accused, answered that "he had never heard it disputed that accused was guilty," and, again, "that he had never heard any one deny that defendant was guilty." Nothing shows that the answers were not made ingenuously; and, even if their purpose had been ulterior, this would not have justified the setting aside of the panel so far as completed. If criminal trials could be nullified or blocked by improper remarks being volunteered in the presence and hearing of the jury by witness, bystander, or other person, a new way of impeding or blocking entirely the administration of criminal justice would have been found. Such volunteered remarks, which a court of justice can in no way anticipate and prevent, cannot be allowed to affect a verdict, especially where the trial judge has remedied the situation as far as possible by proper instruction to the jury, as was done in the present case. Marr's Crim. Juris. 559.

[8] The fourth bill was taken to a witness being allowed to testify that on the date when the deposit in question was received the bank was insolvent. The objection was that the books of the bank were the best evidence.

The witness was testifying as an expert accountant, giving the result of his examination of the books of the bank. This kind of evidence is an exception to the rules of hearsay and primary evidence. State v. Mathis, 106 La. 263, 30 South. 834; Shea v. Sewerage Board, 124 La. 331, 50 South. 166.

[9] Bill No. 5 was to the following statement made by the district attorney in the course of his argument:

"Gentlemen of the jury, I, as district attorney, have given Mr. Perry every opportunity to prove his innocence."

This was merely argumentation, and therefore harmless. Whether, if the accused had not testified in his own behalf, such a remark might not have been construed as a comment on the fact of his not having availed himself of the opportunity to exculpate himself by his own testimony—quære?

[10] Bill No. 6 is to the fact that there was applause by the audience at the conclusion of the argument of the assistant counsel for the state, which applause the judge suppressed at once, warning the jury at the same time not to allow themselves to be influenced by it.

Such an incident as this has been several times held by this court not to vitiate the verdict. State v. Jones, 51 La. Ann. 105, 24 South. 594; State v. Easley, 118 La. 690, 43 South. 279.

A motion for a new trial based upon the points hereinabove considered was properly overruled.

Judgment affirmed.