159 So. 330

**STATE v. CLOUTIER.**

No. 33032.

Jan. 2, 1935.

Rehearing Denied Feb. 4, 1935.

John R. Hunter, of Alexandria, for appellant.

G. L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and S. R. Thomas, Dist. Atty., of Natchitoches (Lessley P. Gardiner, Sp. Asst. to Atty. Gen., of counsel), for the State.

LAND, Justice.

Defendant is indicted for knowingly making false entries "in the daily statement of the Merchants & Farmers Bank of Natchitoches, Louisiana, * * * for the purpose of deceiving the Examiner of State Banks or the Board of Directors concerning the true condition of said Bank, by then and there showing a false entry of $149,938.52, when in fact such entry should have been $151,138.52, the said L. P. Cloutier, then and there being cashier of said Bank. * * *"

Defendant was convicted and sentenced to the state penitentiary at hard labor for a term of not less than eighteen months, nor more than three years.

On appeal, defendant presents for our consideration eight bills of exceptions, assigning the errors in the trial court of which he complains.

### Bill No. 1.

A state witness was requested on direct examination to "state what the entry was on December 14, 1929, in the financial statement." Counsel for defendant objected on the ground that no evidence was receivable as to any

false entries in the financial statement, because such statement was not "a book" of the bank, within the meaning of the statute.

Act No. 3 of 1921, Ex. Sess., § 1, prohibits the making *knowingly* by the president, cashier, or other officer or employee of any state bank, savings bank, or trust company of false entries "in any of the books of said Bank."

In the per curiam to this bill it is stated: "The question asked the witness was, 'State what the entry was on December 14, 1929, in the daily statement.' The question referred to an entry previously testified to in the daily statement and evidence had been adduced that the daily statement was the 'general ledger,' the most important book of the bank."

The objection of counsel for defendant to the question was, therefore, properly overruled.

### Bill No. 2.

■ Mr. Pasquier, a certified public accountant and also a state witness, testified that he could not tell whether either of the items of $149,938.52 or $151,138.52 was correct, without beginning on a later date and checking back from that date. He was requested to do so. Thereupon, counsel for defendant objected to the evidence of any items other than charged in the indictment, upon the ground that the evidence of other false entries amounted to proving independent crimes not charged in the indictment, and also tended to show the bad character of defendant, by proving the commission of other crimes, when the character of defendant had not been put at issue.

The objection was overruled, and the witness was permitted to testify as to several other items other than the one declared to be false in the indictment.

Mr. Pasquier, certified public accountant, had testified that he had made a complete audit of the books of the Merchants' & Farmers' Bank to May, 1929, the false entry charged in the indictment being of date December 14, 1929. He declared that this system was used by him, and that he located the false entry by such method, by finding the dates and amounts composing the difference.

The judge a quo in the per curiam to the bill states: "The question, in my opinion, did not tend to put at issue the character of the defendant, and the evidence given by the witness did not tend in any way to prove the commission of any other crime on the part of the defendant."

As stated in Code of Criminal Procedure, article 441: "Relevant evidence is that tending to show the commission of the offense *and the intent*, or tending to negative the commission of the offense and the intent." (Italics ours.)

The trial judge considered that the evidence was pertinent to the charge, and we find no error in his ruling.

### Bill No. 3.

■ Mr. Pasquier, certified public accountant, after showing that he had made an audit of the books of the bank, was asked the following question: "According to your audit of the bank, what should have been the certificate of deposit of entry on December 14, 1929?"

This question was objected to by counsel for defendant on the ground that it called

for the opinion of the witness and that the books are the best evidence.

In the per curiam to this bill it is stated: "The question asked referred to the certificate of deposit entry on December 14, 1929, in the daily statement. The witness was testifying from the book of the bank, that is daily statement, which was in court and had been offered and filed as evidence. The witness was permitted to answer and stated that the entry should have been $151,138.52 instead of $149,938.52. No mention was made of an entry of $149,436.52."

The witness was testifying as an expert accountant, giving the result of his examination of the books of the bank. This kind of evidence is an exception to the rules of hearsay and primary evidence. State v. Perry, 149 La. 1072, 90 So. 406; State v. Mathis, 106 La. 263, 30 So. 834; Shea v. Sewerage & Water Board, 124 La. 331, 50 So. 166.

Besides, the books of the bank were produced and filed in evidence in this case.

### Bill No. 4.

■ The state called Mr. Pasquier to the witness stand. After proving his qualifications as an auditor and the fact that he had audited the books of the Merchants' & Farmers' Bank of Natchitoches, and, after having testified to statements mentioned in previous bills, he was asked to state the items comprising the difference between the false entry and the correct entry as of December 14, 1929.

Counsel for defendant objected upon the grounds that evidence of another false entry was inadmissible under the indictment and the charges laid therein; and that such evidence amounted to proof of independent crimes, and was an attack upon the character of the defendant.

The witness was permitted to give the dates and amounts composing the difference: June 17, 1929, $200; June 19, 1929, $300; September 16, 1929, $500; and December 14, 1929, $200.

The objection was overruled for the following reasons: "The difference between the alleged false entry and the alleged correct entry amounted to $1,200.00. I permitted the question to be answered upon the statement of the District Attorney that he sought to elicit such evidence for the purpose of showing *intention to deceive*. I did not consider the question or the answer as an attack upon the character or reputation of defendant." (Italics ours.)

The defendant is charged with *knowingly* making a "false entry" in the books of the bank, *for the purpose of deceiving* the examiner of state banks or the board of directors, concerning the true condition of such bank.

In our opinion, the testimony objected to was clearly admissible for the purpose of showing the intent of defendant.

The mere making of one false entry might well be an honest mistake. Defendant may not have known that the entry was false, and may not have intended to deceive any one by making it. But when the false entry charged specifically in the indictment is shown to have been preceded by four other false entries, composing the difference between the true and false statement made in the books of the bank, and amounting to $1,200, such evidence indicates system and criminal

knowledge and intent. A false entry may be made as an accident or mistake once, or even twice, but not repeatedly, as in the present case, and in considerable amounts.

We find no error in the ruling of the trial judge.

### Bill No. 5.

■ While Mr. Pasquier, certified public accountant, was on the stand as a state witness, he was asked to state whether the entries referred to in the foregoing bill *"were in his opinion false entries."* (Italics ours.) Counsel for defendant objected on the ground that the question called for the opinion of the witness on matters affecting the guilt or innocence of the accused, and amounted to an attack upon the character of the defendant before his character was put at issue.

The objection was overruled, and the witness was permitted to answer the question "and to state the entries composing the difference between the correct and false entries," and to give his reasons for the opinion he entertained.

" 'A false entry in the books or reports of a bank,' which is punishable under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497 [see 12 USCA § 592]), prohibiting the president or officers of any banking association from making any false entries, etc., is an entry that is knowingly and intentionally false when made. It is not the purpose of a statute to punish an officer who through honest mistake makes an entry on the books or reports of the bank which he believes to be true when it is in fact false. United States v. Allis ([C. C.] U. S.) 73 F. 165, 170; Cochran v. United States, 15 S. Ct. 628, 633, 157 U. S. 286, 39 L. Ed. 704; United States v. Graves ([D. C.]

U. S.) 53 F. 634, 644; United States v. Allen ([D. C.] U. S.) 47 F. 696, 697. It follows that, *in order to convict, the jury must find not only that defendant made a false entry* in one of the books or records of the bank, *but also that he knew the entry to be false* when he made it. Dorsey v. United States, 101 F. 746, 748, 41 C. C. A. 652." (Italics ours.) Words and Phrases, First Series, vol. 3, page 2656, verbo False Entry.

It is evident, therefore, that the opinion of the certified accountant in this case that defendant made a "false entry" in the books of the bank was not sufficient in itself to convict the defendant, as it was essential that the jury must also find that defendant *knew* the entry *to be false* when he made it.

The expert accountant expressed no opinion as to the guilty knowledge of the defendant, when the false entry was made. In fact, section 1 of Act No. 3 of 1921, Ex. Sess., does not pretend to punish the mere making of "a false entry" in the books of a bank, but specifically provides that, in order to constitute the offense, the "false entry" must be *"knowingly"* made.

As no special charges were requested by defendant, and as we do not find any objection to the charge given to the jury, it must be assumed that the trial judge charged the jury that mere proof of a false entry was not sufficient to convict, but that the jury must find also that the defendant made the false entry, *knowing* at the time that it was false.

Act No. 3 of 1921, Ex. Sess., is similar to the statute prohibiting the officers of a state bank from receiving deposits, when they *know* a bank to be *in insolvent circumstances.* In

the case of State v. Perry, 149 La. 1065, 90 So. 406, an expert accountant was permitted to testify that, on the date the deposit was received, *the bank was insolvent*, as a result of his examination of the books of the bank. But the expert accountant in that case did not express any opinion as to the guilty knowledge of the defendant, when the deposit was made.

In this case the bank books themselves, unexplained, showed nothing to the court or the jury. They did not disclose the result of the examination by the expert accountant, and such result could not have been ascertained otherwise, as the books of the bank had to be checked back from a later date, in order to discover the items showing the entry to be false.

It is well settled that: " 'Expert accountants may be permitted to give in evidence the result of their examination of the books, accounts, etc., kept by the alleged embezzler in connection with the trust which he is claimed to have violated, when such books, accounts, etc., are too voluminous to permit of an examination of them in court.' 10 Am. & Eng. Enc. Law (2d Ed.) verbo 'Embezzlement,' p. 1034; State v. Findley, 101 Mo. 217, 14 S. W. 185; State v. Reinhart, 26 Or. 466, 38 P. 822; Whart. Cr. Ev. (9th Ed.) § 166; Underh. Cr. Ev. p. 56, par. 45. In Hollingsworth v. State, 111 Ind. 289, 12 N. E. 490, the supreme court of that state held that experts, who make an examination of voluminous books, records, papers, and files of the county treasurer's office, may be allowed to testify to such facts shown by the books and records as will establish the amount of the defalcation. See, also, Underh. Cr. Ev. p. 351, par.

291." State v. Mathis, 106 La. 265, 30 So. 834, 835.

The mere fact, however, of shortage in accounts, without wrongful intent, does not prove the crime of embezzlement. See, also, Wigmore, Ev., par. 1230, p. 1473, and Greenleaf Ev. (16th Ed.) vol. 1, p. 690.

Our conclusion is, therefore, that the expert accountant in this case, by testifying that the entry was "false," did not express any opinion as to the guilt or innocence of defendant, and that such testimony was properly admitted, as the result could not have been arrived at otherwise.

### Bill No. 6.

The same issue is involved in this bill. The expert accountant for the state was asked to state whether the item, $149,938.52, was a "false entry." The same objections were urged as in bill No. 5 and were overruled. The witness was permitted to answer, and gave his opinion that the entry was "false."

### Bill No. 7.

The motion for a new trial is based upon the errors embodied in the various bills of exceptions already reviewed, and upon the usual ground that the verdict is contrary to the law and the evidence.

The trial judge states in the per curiam to this bill that he overruled the motion for a new trial as he was of the opinion that the guilt of the defendant had been established beyond a reasonable doubt, and that the verdict of the jury was fully warranted by the law and the evidence.

## Bill No. 8.

█ The motion in arrest of judgment is based upon the contention that the indictment in this case fails to denounce any offense known to the laws of this state, as it is charged that the false entry was made *"in the daily statement* of the Merchants' & Farmers' Bank of Natchitoches," instead of *"in a book* of the bank."

As the evidence on the trial of the case showed that "the daily statement" of the bank was "the general ledger," the most important book of the bank, the doctrine of aider by verdict applies and cures the defect complained of in the indictment.

The conviction and sentence are affirmed.

O'NIELL, C. J., dissents from the ruling on bills 5 and 6.

ODOM, Justice.

I dissent from the ruling on bill No. 5. The witness Pasquier was an expert accountant and, while it is true, as stated in the majority opinion, that such a witness may give in evidence the result of his examination of books and accounts in cases like this, yet he should not, I think, have been permitted to state to the jury that in his opinion certain book entries were "false entries," as that term is used in the statute under which this defendant was prosecuted. The term "false entry," as used in the statute, may or may not imply an entry made dishonestly and with intent to deceive. Webster says that the word "false" means "given to deceit, dishonest, treacherous, perfidious, assumed or designed to deceive, intentionally or wilfully untrue,

hypocritical." That is the sense in which the word "false" is used in the statute and that is the sense in which it is ordinarily used by laymen. It is sometimes used as "not according with truth or reality, not true, erroneous, not genuine or real." Webster.

An entry in the books of a bank made by its president, cashier, or bookkeeper might be erroneous, not a true entry, and still not be a "false entry" as that term is used in the statute. An incorrect, erroneous entry might be unintentionally, honestly made, and carried forward in a book and from book to book. The making of such an entry is not culpable. The statute says that if any officer or employee of a bank shall knowingly make "false entries" in any of the books or records of the bank for the purpose of deceiving the examiner of state banks or the board of directors or the public, he shall be guilty of a felony. What that means is that the entry, to constitute a felony, must not only be false to the knowledge of the one who makes it, but must be made with intent to deceive.

In Ratterman v. Ingalls, 48 Ohio St. 468, 28 N. E. 168, it was held that the word " 'false,' in jurisprudence, usually imports something more than the vernacular sense of 'erroneous' or 'untrue.' The word is often used to characterize a wrongful or criminal act, such as involves an error or untruth intentionally or knowingly put forward. A thing is called 'false' when it is done or made with knowledge, actual or constructive, that it is untrue or illegal, or is said to be done falsely when the meaning is that the party is in fault for its error."

"Falsely," as used in an instruction stating that it is for the jury to determine whether

defendant falsely represented certain facts, will be construed to mean something more than "mistakenly" or "untruly" and cannot be construed otherwise than to mean something designedly untrue or deceitful, and as involving an intention to precipitate some fraud. State v. Brady, 100 Iowa, 191, 69 N. W. 290, 36 L. R. A. 693, 62 Am. St. Rep. 560.

"False account," as used in the revised statutes of New Hampshire, was construed in Putnam v. Osgood, 51 N. H. 192, to mean an intentionally false account and not an account which is incorrect through mistake. "It is quite obvious that the term 'false account' may be construed to include an account which is false, known to be untrue; and this, we think, is the more common and ordinary meaning of the term." Quotations and citations from Words and Phrases, First Series, vol. 3, pages 2655 et seq.

The author of the majority opinion quotes from the same work at page 2656 the definition of "false entry" as follows (omitting citations):

" 'A false entry in the books or reports of a bank' * * * is an entry that is knowingly and intentionally false when made."

The witness Pasquier was permitted to state that in his opinion certain entries in the books and records of the bank were "false entries." The jurors knew, of course, that the defendant was being prosecuted for making such entries in the books and records of the bank as constituted a felony under the statute, that is, entries, which were false to his knowledge and made with intent to deceive; and they knew, of course, that what the witness meant when he stated that in his opinion those entries were "false entries," was that in

his opinion they were false to the knowledge of the accused and made by him with intent to deceive.

The defendant was being prosecuted for making "false entries" in the books of the bank and the witness was speaking of "false entries." The jurors understood, of course, that if defendant had made "false entries" in the books of the bank, he was guilty. So that the statement of the witness that in his opinion the entries were "false entries" was tantamount to a statement that in his opinion the defendant was guilty.

This witness was not a layman, but an expert accountant, and was supposed to know, if any one did, whether the entries were false or not. Naturally his opinion carried great weight with the jurors because he knew more about such technical matters than they did. To permit him to express an opinion that the defendant was guilty, and that is virtually what he did, was under the circumstances about as prejudicial to defendant's case as if a like opinion had been expressed to the jurors by the judge himself.

It was not within the province of the witness to express an opinion concerning the sole issue in the case, which was whether the entries in the books were false within the meaning of the statute. The witness should have been permitted to state all the facts disclosed by the books, and it was for the jurors to say, after learning the facts from the witness, whether the entries were "false" as that term is used in the law and was used in the indictment. It is the exclusive province of the jury in all criminal trials to pass upon the guilt or innocence of the defendant. I think the opinion expressed by this witness

was highly prejudicial to the defendant and that the verdict and sentence should be set aside.