Defendant was indicted and tried in Morehouse Parish for the murder of Dave White, a member of the Police Department of the City of Bastrop. Following the return of the jury's verdict of guilty as charged, the court sentenced him to suffer the penalty of death in the manner and form provided by law. He is appealing from the conviction and sentence.
The undisputed facts appear to be that shortly before six o'clock of the morning of August 21, 1944, decedent, Dave White, in response to a telephone call, went to the home of the accused, in the City of Bastrop, Morehouse Parish, and arrested him. While the two were in an automobile traveling to the municipal police station, they met one Ernest Neighbors, a street maintenance employee of such city, who was induced by the decedent to join them. After arriving at their destination, and within the office of the Chief of Police, decedent and Neighbors attempted to search the prisoner. The latter resisted their efforts, and a violent scuffle ensued, resulting among other things in the rendering unconscious for a few moments of Neighbors. On his regaining consciousness he noticed that decedent was lying on the floor, in a dazed or semi-conscious condition, and that the prisoner had fled, carrying away decedent's 44-calibre Smith Wesson revolver. *Page 852 
Medical and other assistance was sought immediately by telephone, but the police officer died before it arrived. The death, as disclosed by a physical examination and by X-rays, was caused by a fracture of the skull. Near the left ear of decedent, for a space of about one and one-half inches long and one inch wide, the bone was crushed, this condition apparently having resulted from the delivery of a strong blow with a blunt instrument.
Slightly more than two weeks later, during the night time, the accused was apprehended by officers in a field located about three and one-half miles south of McGhee, Arkansas, some seventy miles from Bastrop. While refusing to surrender and resisting arrest, he fired five shots at the officers with the revolver that he had taken from decedent; none of them, however, took effect. In turn he received a bullet wound in his right shoulder. After his capture he was taken in an automobile to a doctor in McGhee, who dressed his wounds, then to the hospital at the Louisiana Penitentiary at Angola for treatment and safe keeping.
On or about September 26, 1944, he was transferred to the jail of Ouachita Parish (this adjoins Morehouse Parish), where he was kept and treated until the holding of his trial in Morehouse Parish on October 18 and 19, 1944. His internment in that jail occurred primarily because it was safer and it afforded the accused much better medical facilities and attention than the Morehouse Parish quarters. When tried his shoulder wound had completely healed. *Page 853 
To obtain a reversal, on this appeal, of the conviction and sentence, defense counsel relies upon three bills of exceptions.
The first complaint relates to the trial court's refusal to grant a change of venue, it being urged that the accused could not receive a fair and impartial trial in Morehouse Parish. The contention is made that general prejudice existed against him because of the decedent police officer's popularity, his wide acquaintance, and his numerous family connections throughout that parish.
The cases of State v. Perry, 149 La. 1065, 90 So. 406, and State v. Murphy et al., 154 La. 190, 97 So. 397, are authority for the proposition that a motion for a change of venue is correctly overruled when the evidence discloses that the accused could obtain a fair and impartial trial and when a satisfactory jury is obtained without his having had to exhaust all of his peremptory challenges. Furthermore, in State v. Roberson,159 La. 562, 105 So. 621, and State v. Collier, 161 La. 856,109 So. 516, it is said that an application for a change of venue is addressed to the sound discretion of the trial judge and his ruling thereon will not be disturbed unless an abuse of that discretion is shown.
In his per curiam, attached to the first bill of exceptions, the trial judge states:
"In selecting the jury of twelve for trial of this case, twenty-nine jurors were examined on their voir dire — twenty-two from the regular venire and seven from the tales jury list. Out of the twenty-nine prospective jurors so examined, ten were *Page 854 
accepted from the regular venire, two from the tales jury list, eight were excused for cause and nine were challenged peremptorily by the defendant.
"After hearing all the evidence, the Court was of the opinion that a fair and impartial jury could be obtained, and subsequent events proved the correctness of this view, since a fair and impartial jury was obtained for the trial of the case without the accused having had to exhaust his peremptory challenges, he having used but nine peremptory challenges."
Our study of the evidence, along with the fact that defendant used only nine of his twelve peremptory challenges, convinces us that defendant could and did receive a fair and impartial trial. Of the seven witnesses offered by the defense on a hearing of the motion for a change of venue, all of whom were prominent citizens of and well acquainted throughout Morehouse Parish, two testified to the existence of some bitter resentment toward the accused for a day or so following the police officer's death. But during the five or six weeks previous to the trial, none had heard any expression of anger or prejudice against him; and all were of the firm belief that he would be fairly and impartially tried.
Bill of exceptions No. Two was reserved to the court's overruling of a plea of present insanity. In that plea defense counsel contended for his client the existence of "present insanity and mental deficiency to such extent that he, the said Solomon Washington, does not understand the nature *Page 855 
of the proceedings now being taken against him and to such further extent that he is unable to give to appearer any assistance upon his trial." Here, the argument is made that fatal error was committed by the court's refusal to appoint physicians, as contemplated by Article 267 of the Code of Criminal Procedure (amended by Act 261 of 1944), to determine defendant's mental condition.
The mentioned Article, as amended, in so far as appropriate here, reads:
"If before or during the trial the court has reasonable ground to believe that the defendant, against whom an indictment has been found or information filed, is insane, or mentally defective, to the extent that he or she is unable to understand the proceedings against him or her or to assist in his or her defense, the court shall immediately fix a time for a hearing to determine the defendant's mental condition. The court may appoint two disinterested physicians to examine the defendant with regard to his present mental condition and to testify at the hearing. * * *"
In State v. Ridgway, 178 La. 606, 152 So. 306, this court interpreted Article 267 of the Code of Criminal Procedure as it existed before being amended by Act 261 of 1944, at which time such Article recited that, "The court may appoint two disinterested qualified experts in mental diseases to examine the defendant with regard to his present mental condition * * *"; it did not then, as it did in its amended form when the accused was tried, provide that, "The court may appoint two disinterested physicians to examine the defendant *Page 856 
with regard to his present mental condition * * *." Therein (the Ridgway case) we observed:
"The clear purpose of the law is to make effective the humane principle that no person while insane can be tried and punished for a criminal offense. But it was never intended that the trial on the issue of guilt or innocence shall be delayed simply because the defendant seeks to avoid trial on the ground that he is presently insane.
"Under the express terms of the statute, the trial judge is not required to order an inquiry into the mental condition of the defendant unless he had reasonable ground to believe that defendant is insane. But defendant's assertion that he is insane, or even the affidavits of witnesses that they do not consider defendant is mentally sound, are not of themselves sufficient to create such belief in the mind of the trial judge. The question is one that addresses itself to the sound discretion of the court. Reasonable ground to believe that the defendant is insane can only arise in the mind of the trial judge when information to that effect is furnished from a trustworthy source or by credible parties, or when from the inspection or observation of the court itself, defendant appears to be mentally unbalanced."
The doctrine of the Ridgway case was approved and followed in State v. McManus, 187 La. 9, 174 So. 91, State v. Messer,194 La. 238, 193 So. 633, and State v. Allen, 204 La. 513,15 So.2d 870.
In the instant case we have made a careful and thorough study of the evidence *Page 857 
relating to the plea of present insanity offered in defendant's behalf. Of the three medical witnesses testifying, one was the coroner of Ouachita Parish, another the coroner of Morehouse Parish, and the third an equally prominent and reputable physician of Bastrop, all of whom had examined the accused, either singly or together, on at least two occasions while he was confined in the Ouachita Parish jail and, in connection with the examinations, had made innumerable laboratory and X-ray tests. It is true that they purposed principally to determine his physical condition, since he insisted that he could not walk and complained for awhile of a chest pain and later of a back ache. While the numerous tests were being conducted, however, accused talked freely with the physicians, thus affording them the opportunity of considering the matter of his sanity.
The accused checked normal in every respect, and no reason for his claimed inability to walk and for his asserted pains was ascertained. All of the physicians expressed the very definite opinion that he was feigning physical disability. Moreover, they observed that he answered every question promptly, distinctly, coherently and intelligently; and in view of that observation, and having found no reason to suspicion insanity, they were positive that he was not insane and that he fully understood the nature of the proceedings against him.
Several lay witnesses also were offered by the state, among whom were former employers of the accused. These testified that defendant, during the period of time *Page 858 
they had known him, had never given any indication of mental deficiency.
The only person testifying in support of the plea of present insanity was defendant's attorney. Because of an asserted inability to hold a coherent conversation with and to obtain any assistance from the accused, the witness was of the belief that insanity existed.
In his per curiam respecting the ruling on the plea, the trial judge commented:
"After hearing all the evidence, the Court was of the opinion that there was no reasonable ground to believe the defendant was insane or mentally defective to the extent that he was unable to understand the proceedings against him or to assist in his defense, and this being so, there was no necessity for the appointment of disinterested qualified experts in mental diseases; but, on the contrary, the court was of the opinion that the defendant was presently sane. * * *"
It is also our opinion that the evidence, when considered in its entirety, does not furnish a reasonable ground for the belief that the accused experienced any mental deficiency; and we hold that the trial judge did not abuse his discretion by failing and refusing to appoint physicians to examine the defendant with regard to his mental condition.
The third bill of exceptions was taken to the overruling of a motion for a new trial. The motion contains only the allegation that the verdict of the jury is contrary to the law and the evidence. The bill presents nothing reviewable by this *Page 859 
court. Article 516 of the Code of Criminal Procedure; State v. Smith, 193 La. 706, 192 So. 106; State v. Hart, 183 La. 443,164 So. 166; State v. Proctor, 165 La. 584, 115 So. 759.
For the reasons assigned the verdict and sentence are affirmed.
HIGGINS and HAWTHORNE, JJ., take no part.