BRUNOT, J.
 

 The accused was prosecuted upon an indictment by the grand jury charging him with the crime of murder. He was formally arraigned, pleaded not guilty, counsel was appointed to represent him, the case was assigned, trial was had, and the jury returned a verdict of “guilty as charged.” Thereafter a motion for a new trial was filed, heard, and overruled, and the court sentenced the accused to be hanged. From the verdict of the jury and the sentence of the court the defendant appealed.
 

 There are five bills of exception in the record.
 

 Bill No. 1.
 

 This bill was reserved to the overruling of a motion for a change of venue. The ground upon which the motion is based is the alleged existence of prejudice against the defendant in the parish of St. Bernard of such a pronounced character' and so general that a fair and impartial trial of defendant could not be secured in that parish.
 

 The only testimony taken on the trial of the motion was given by four witnesses, all of whom were called by the defendant. Two of these witnesses were of the opinion that the defendant could secure a fair and impartial jury in the parish, and that competent jurors to try the case could probably be found in the first ward of the parish. The other two witnesses testified that the prejudice against the defendant in the first ward of the parish, and particularly in Arabi, was so pronounced that ,it was not probable that a fair and impartial jury to try the accused could be secured from among the residents of that ward, but these witnesses knew nothing whatever of the sentiment towards the accused of the residents of the several other wards of.the parish. In State v. Roberson, 159 La. 562, 105 So. 621, No. 27303 of the docket of this court, the court said:
 

 “Applications for a change of venue are addressed to the sound discretion of the trial judge and unless an abuse of such discretion is shown his ruling will not be interfered with.”
 

 This court so held in State v. Ford, 37 La. Ann. 443; State v. Causey, 43 La. Ann. 903, 9 So. 900; State v. Gonsoulin, 38 La. Ann. 460; State v. White, 30 La. Ann. 365; State v. Bunger, 11 La. Ann. 607; State v. Daniel, 31 La. Ann. 92; State v. Dent, 41 La. Ann. 1084, 7 So. 694; State v. Abshire, 47 La. Ann. 542, 17 So. 141.
 

 There is no mandatory or ■ statutory provision upon the subject in this state.
 

 “Where there is no mandatory statutory provision, the general rule is that an application for a change of venue in a criminal case is addressed to the sound discretion of the court, and for this reason it is not reyersible error unless it appears from the facts presented on the application that the court acted unfairly or that there was a palpable abuse of the judicial discretion.” G. J. vol. 16, p. 204.
 

 
 *859
 
 As none of the witnesses, on the trial of the motion, testified that the defendant could not obtain a fair and impartial trial in the parish of St. Bernard, but merely expressed their opinions as to the sentiment of the people of one ward of the parish, we think the ruling of the court was correct.
 

 “To entitle accused to a change of venue, the prejudice against him must be so general throughout the parish as to render it impracticable for him to get a fair and impartial trial.” State v. Gonsoulin, 38 La. Ann. 459.
 

 Bill No. 2.
 

 This bill was reserved to the overruling of defendant’s objection to going to trial upon the alleged ground that the venire or list of petit jurors served upon him had been improperly drawn.
 

 It appears that the venire was drawn for service for a week in the month of October, 1925, but as there were no criminal cases to be tried at that time the jurors were not then notified to appear for service. During the month of January, 1926, criminal cases were assigned for trial, and the venire which had been drawn for service during the month of October, 1925, was ordered to report in court on a fixed date for jury service for one week in the month of January, 1926. Defendant does not question the validity or the regularity of the acts of the jury commission or the qualifications of the commissioners. His contention is that the jury was drawn to serve during a particular week, but that it was not called for service until a date some two or three months thereafter. St. Bernard is a part of a judicial district which is composed of more than one parish, and sections 9 and 10 of Act 135 of 1898 are special provisions relating to such districts. Section 10 is as follows:
 

 “That in districts composed of more than one parish, the jurors drawn for the first week of the session shall constitute the petit jury for that week, and those drawn for the second shall serve for the time for which they are drawn, provided, that if the jury drawn for any week of the session do not serve as jurors during that week, they may be required to serve during a subsequent week of any session of the court until another venire shall have been drawn by rhe commission, unless sooner discharged by the district judge,” etc.
 

 In this ease the commission had not drawn another venire, the jurors drawn for service during the m^nth of October, 1925, had not served, and the district judge had not discharged those jurors. The judge correctly overruled defendant’s objection to going to-trial, and the bill reserved to his ruling is without merit.
 

 Bill No. 3.
 

 One of the regular venire, Juan Basoco, after being examined upon his voir dire, was. challenged by the defendant for cause. The challenge was denied, and defendant excepted to the ruling and reserved this bill. The examination, by counsel for defendant, of the tendered juror-, is, in part, as follows:
 

 “Q. You say that you have an opinion?
 

 “A. Any man that is a cold-blooded murderer, he will have to pay for what he did.
 

 “Q. Is that opinion in your mind at this time ?
 

 “A. The only thing I want to say, I want to hear the witnesses; when somebody gets killed, it might not be the man that did the killing.
 

 “Q. Do you feel that you can disregard that opinion in a case of murder and try this man entirely upon the facts and evidence that you hear from the witnesses to-day?
 

 “A. All the time.
 

 “Q. What do you mean by all the time?
 

 “A. I mean, as long as I am sure that it is the man, if the evidence proves that that is the man, I never change my mind.
 

 “Q. Do you mean by that that, as long as they prove that he killed the man, you wouldn’t care what the conditions were — that you would want to see him hanged; is that it?
 

 “A. I want to hear the witnesses.
 

 “Q. But if you would be taken on this jury, would you not, besides what the witnesses here say, also give weight to your opinion, already fixed, that, if it is proven that he killed the man, that lie ought to hang, no matter what the conditions may be?
 

 “A. I can’t be no conditions, me; if he can prove that he is the mán, that is all.
 

 
 *861
 
 “Q. Then what would you do if they can prove that he is the man?
 

 “A. I said that before.
 

 “Q. What?
 

 “A. If you can prove that he is the man,-for my part he is going to pay for what he did the other man.
 

 “Q. As long as they can prove that he is the man that hilled the other man?
 

 “A. I don’t care if he is my brother.
 

 “Q. You don’t care what the conditions were, you would want him hanged?
 

 “A. Every man that kills cold-blooded ought to be hanged,” etc.
 

 After some further examination the judge then questioned the prospective juror, and the following appears in the record:
 

 “The Court: So far, I think, he is qualified to serve on the jury.
 

 “Q. Do you know anything about the case?
 

 “A. I heard something about the case.
 

 “Q. Did you form an opinion about that?
 

 “A. The witness will have to tell me.
 

 “Q. But you haven’t any opinion now?
 

 “A. I said if he is the right man he ought to be hanged; that is all.
 

 “Q. As it stands, you wouldn’t say you have a fixed opinion?
 

 “A. It may be the wrong man.
 

 “Q. Unless you hear the evidence?
 

 “A. When I hear the evidence.
 

 “Q. You will pass on whether he is guilty or not?
 

 “A. When I know if that is the man.”
 

 After this examination the court held that Juan Basoco was a competent juror. We think his ruling was erroneous. There is grave doubt in our mind as to whether the prospective juror was concerned with or desired testimony upon any matter in connection with the case except proof of the identity of the slayer. If he is to be taken at his word, the defenses which might have been urged on the trial did not concern him. He had prejudged the case as a deliberate and cold-blooded murder, and, in his opinion, whoever committed the crime ought to he hanged. One who has such a fixed opinion upon the merits of a case is not a competent juror. The rule in this state is that the overruling óf a challenge of a juror for cause, even if improper, is not ground for reversal of the verdict when the juror was peremptorily challenged and when the panel was completed without exhausting defendant’s peremptory challenges. There are so many decisions recognizing and enforcing this rule that it is not necessary to cite authority for it here, but, in this ease, the rule does not apply, because the jury was not completed before the defendant had exhausted the twelve peremptory challenges allowed him by the law. It is true that Juan Basoco was peremptorily challenged by the defendant, but on page 117 of the transcript it appears that defendant challenged juror Papania, whereupon the district attorney objected upon* the ground that defendant had already exhausted twelve peremptory challenges, the court sustained the objection, and Papania served as a juror. It is also a rule in all jurisdictions that the presiding judge, of necessity, has discretion in passing upon the qualifications of jurors, and, in this state, his rulings on matters of that character will not be set aside by the reviewing court unless the error is manifest. State v. Welsch, 34 La. Ann. 991; State v. Creech, 38 La. Ann. 480.
 

 In the case before us we are of the opinion that the ruling of the court compelled the defendant to use one of his peremptory challenges in challenging an incompetent juror, and as he thereby exhausted his peremptory challenges before the jury was completed and was compelled to accept upon the jury an objectionable juror, the ruling of the court complained of was prejudicial error, and so manifestly injurious to the defendant as to vitiate the verdict. Counsel for the state have cited in this connection the case of State v. Hamilton, 155 La. 1069, 99 So. 874. In that ease this court correctly held that a mere impression derived from a discussion of the offense, or an opinion formed from reading newspapers, did not disqualify a juror. Even by analogy that case does not apply.
 

 
 *863
 
 As we have reached the conclusion that -the court erred in overruling defendant’s challenge for cause of juror Juan Basoco, and that defendant was thereby compelled to accept upon the jury panel an objectionable juror, and that this erroneous ruling was prejudicial to the defense, it is unnecessary, to consider the bill reserved by defendant to the testimony of Superintendent Healey, of the New Orleans police force, or the bill reserved to the overruling of defendant’s motion for a new trial.
 

 For the reasons assigned, the verdict of the jury and the sentence of the court áre avoided and set aside, and the case is remanded to be tried according to law.
 

 ST. PAUL and ROGERS, JJ., dissent.