McCALEB, Justice.
Tom Johnson, a 41 year old Negro employed as a farm laborer on the Holt-Murphy Plantation in West Carroll Parish, shot and killed one Henry F. Lewis, .the 60 year old white overseer of the plantation, on the morning of September 29, 1953. He was indicted for murder on October 2, 1953. The indictment was quashed on motion of the attorneys, who were appointed by the court to defend him. He was again indicted, on October 22, 1953, but that indictment met the same fate as the first one, being quashed by the . district judge because of irregularities committed by the jury commissioners in the drawing of the Grand and Petit Juries. ■On November 6, 1953, another indictment was returned against him, to which he entered a plea of not guilty by reason of insanity. Following a trial, he was found guilty as charged and sentenced to death. He is appealing from his conviction, relying on twelve bills of exceptions for a reversal.
Bill No. 1 was taken to the overruling of a motion for a change of venue which was grounded on the claim that the citizens of West Carroll. Parish were prejudiced against appellant. To support this claim, six witnesses and various newspaper accounts, concerning events subsequent to the homicide, were offered by the defense. Seven witnesses testified for the State.
*35 The proof does not sustain appellant’s contention that public opinion in West Carroll Parish was so crystalized and fixed against him that he could not receive a fair trial therein. An application for a change of venue is addressed to the sound discretion of the judge. State v. Roberson, 159 La. 562, 105 So. 621, State v. Collier, 161 La. 856, 109 So. 516, State v. Washington, 207 La. 849, 22 So.2d 193 and State v. Leming, 217 La. 257, 46 So.2d 262. Here, we find no abuse of discretion; the evidence shows that the ruling was correct.
Bills Nos. 2, 3 and 6 relate to the refusal of the judge to appoint a lunacy commission. On November 13, 1953, ten days before the trial was scheduled, counsel filed a motion that appellant be examined for the purpose of determining his present sanity and his sanity at the time of- the commission of the offense. In this motion, 'it was set forth that appellant had become insane, some twenty years ago, alter being struck by a bolt of lightning which left him partially paralyzed; that, approximately •a year before the homicide, he had injured ¡his head in a violent fall; that, suffering continuous head pains, he was placed in a clinic in Delhi, Louisiana for treatment where it was found advisable that he undergo a frontal operation and that operations were performed at Charity Hospitals in Monroe and New Orleans. A certified copy of appellant’s medical record at Charity Hospital in New Orleans was attached to the motion.
The judge denied the appointment of a lunacy commission on the ground that the motion was not properly supported by affidavits and was of the further opinion that there was nothing in the Charity Hospital report that afforded any reasonable ground to believe that appellant was insane.[1] To this ruling, defense counsel reserved Bill No. 2 and requested the judge to permit them to file an affidavit based on facts in support of the motion. The judge refused this request, stating that the offer came too late and that the affidavit of counsel would add nothing to the motion. Counsel then reserved Bill No. 3.
On the date of the trial, November 23, 1953, counsel filed another motion, identical in verbiage with the first, for a lunacy commission. As this motion was supported by several affidavits, the judge ordered a hearing on' the 'question of whether or not a commission should be appointed. In support of the allegations, thirteen lay witnesses were produced. Most of these witnesses lived a great distance from appellant and, with the exception of a few *37 relatives, none had seen or observed him for more than a year before the commission of the offense. Moreover, while their statements were to the effect that appellant is dull minded and that he suffered from occasional seizures (“fits”)» not one of them avouched that he was incapable of distinguishing between right and wrong.
The judge, in denying the application, resolved that, after hearing the evidence (taken in connection with his personal investigation and observation), there was no substantial basis to cause him to believe that appellant was or is insane.
The appointment of a lunacy commission is addressed to the sound discretion of the trial court, State v. Ledet, 211 La. 769, 30 So.2d 830, the test being whether, from the facts brought to the attention of the judge, he has reasonable ground to believe that the accused is insane or mentally defective to the extent that he is unable to understand the proceedings against him. Article 267, Code of Criminal Procedure, LSA-R.S. 15:267; State v. Ridgway, 178 La. 606, 152 So. 306, State v. Hebert, 186 La. 308, 172 So. 167, State v. Messer, 194 La. 238, 193 So. 633, State v. Gunter, 208 La. 694, 23 So.2d 305 and State v. Bessar, 213 La. 299, 34 So.2d 785. Hence, the burden was upon appellant to exhibit that there was a manifest abuse of discretion by the judge. This he has not done as the testimony of his witnesses is not of such quality to inspire in the judge a reasonable basis for believing that appellant was or is insane, this being particularly so when their statements are compared with the opposing views expressed by the witnesses for the State.
Insofar as Bills Nos. 2 and 3 are concerned, it suffices to say that, even if it be assumed that the judge was wrong in summarily dismissing the application for a lunacy commission on November 13, 1953, the error was of no consequence since appellant was afforded a full hearing on November 23rd.
Bill of Exceptions No. 4 was reserved to the overruling of a challenge for cause of the prospective juror, George Newman, on the ground that he favored an unqualified verdict in the case in the absence of mitigating circumstances.
There is no merit in the bill for the reason that the testimony of Mr. Newman on his voir dire plainly discloses that he had no fixed opinion as to whether he would vote for life imprisonment or capital punishment, if appellant’s guilt was shown beyond a reasonable doubt.
The case of State v. Henry, 197 La. 999, 3 So.2d 104, relied on by counsel, is not authority for their position that the accused in a murder case should not be required to accept a juror who favors a cap *39 ital over a qualified verdict where there .are no mitigating circumstances. Conversely, the opinion in that matter declares that it is improper for counsel on either side to question prospective jurors in capital cases respecting the kind of verdict they would render under any given state ■of facts or circumstances. However, the rationale of the decision is that, as it is permissible for the State to ascertain whether prospective jurors have conscientious scruples against capital punishment, the accused is likewise entitled to elicit information as to whether such jurors favor only the death penalty, in the event of conviction, and are opposed in principle to a qualified verdict. The juror ■challenged in this case did not say that he ■opposed the rendition of a qualified verdict in case of guilt; he properly said (in answer to an improper question) that the verdict for which he would vote would depend on the evidence in the case.
Bill. No. 5, which was taken to the overruling of a motion for a continuance applied for on the day of trial, is not substantial. The basis of the motion was that counsel, who had been appointed by the court, on November 6, 1953, seventeen days before the trial, did not have sufficient time within which to investigate the ■case and adequately prepare a defense. It appears that the judge offered to post-, pone the trial for a week, so that counsel would have additional time, but they insisted that a thirty day continuance was in order. Why this additional delay was essential is not entirely clear. Indeed, counsel refused the seven day offer by the court and apparently were not inconvenienced by trying the case on the day originally fixed.
Bill No. 7 was reserved to the overruling of an oral motion of defense counsel for a lunacy commission, which was made following the introduction of evidence on the trial of the case, touching upon the present sanity of appellant. In his per curiam, the judge remarks that he overruled this motion because the evidence offered on the trial was the same type of lay testimony as that submitted to him at the hearing of the formal application for the appointment of a lunacy commission.
Since this additional evidence is of the same tenor as that presented on the written motion for a lunacy commission, we cannot say that the judge abused his discretion in ruling that it did not cause him to alter his previous opinion as to appellant’s sanity.
Bills Nos. 8, 9 and 10 relate to proceed ings had for the introduction of a statement or purported confession in evidence and may be considered together.
In his opening statement, the district attorney told the jury that the accused had made a statement concerning the kill *41 -ing and, thereafter, during the trial, he •announced that he was desirous of laying ■the foundation for the admission of this •statement in evidence. At that time, the •court inquired of counsel for appellant ■whether they wished that the jury be removed from the courtroom. Upon the failure of counsel to take advantage of ■this offer and request that the jury be withdrawn, evidence was taken in the presence of the court and jury for the purpose of establishing the voluntary character of the statement. Following the reception of this testimony, defense counsel informed the court that they wished an opportunity to traverse it and asked that the jury be withdrawn from the courtroom. This request was granted, the jury removed and, thereupon, counsel sought permission to place appellant on the stand for the limited purpose of contradicting the evidence produced by the State. However, the judge declared that he would not restrict cross-examination by the district attorney in advance but would pass on each question as it was propounded. To this ruling, counsel for appellant reserved Bill of Exceptions No. 8.
Immediately thereafter, defense counsel objected to the admission of the statement on the ground that the prosecution had failed to show that it was free and voluntary. This objection was sustained. However, the judge stated that he would permit the prosecution to adduce additional evidence to exhibit, if it could, that no promises were made to appellant at the time he gave the statement. Thereupon, defense counsel moved for a mistrial, contending that the jury had been prejudiced by the opening statement of the district attorney — that he would introduce in evidence the statement of appellant — and also by the testimony taken in the presence of the jury in laying the foundation for the admission of the statement. The judge overruled the motion and counsel reserved Bill No. 9.
Subsequently, the court permitted the prosecution to place its witnesses on the stand (this time out of the presence of the jury) in another attempt to lay the foundation for the introduction of the statement in evidence. Counsel for appellant objected and, when their protest was overruled, Bill No. 10 was taken.
None of these bills disclose grounds for a reversal of the conviction. Initially, although it appears that the judge heard more evidence pertaining to the admissibility of the statement, it is conceded that it was not offered in evidence by the prosecution. Since it is not in the record (not being offered or attached to the bills of exceptions) we have no way of determining whether it is a confession in its true sense — an admission of guilt, or an admission not involving the existence of criminal intent — an exculpatory statement. In these circumstances, *43 it is impossible for us to deduce that the rulings of the judge, assuming for the moment that they were incorrect, were prejudicial to either the constitutional or statutory rights of appellant because — if the statement was an admission not involving criminal intent and not a confession of guilt — there was no necessity for the prosecution to lay a foundation for its admission[2] and therefore any errors committed in this connection would be inconsequential.
On the other hand, if we theorize that the statement was in the nature of a confession, then appellant was not injured by it as it was not received in evidence. And this furnishes a valid reason for rejecting the contention made under Bill of Exceptions No. 8, which is founded on the refusal of the judge to permit appellant to take the witness stand for the limited purpose of contradicting the foundation laid by the prosecution for the admission of the statement. Although the ruling was patently erroneous, being contrary to our decision in State v. Thomas, 208 La. 548, 23 So.2d 212, no harm was occasioned thereby.
Nevertheless, counsel argue that, as set forth by them in Bill No. 9, the failure of the State to offer the statement did not lessen the prejudice accruing as a consequence of the district attorney’s opening remark that he would introduce it and also resulting from the foundation laid by the State in the presence of the jury for its. admission.
Of course, as we have said, it is-impossible to evince that appellant was. prejudiced by these factors in the absence-of information as to whether the statement was a confession or an admission not involving criminal intent. But, if we assume again that the statement was in the nature of a confession, the mere fact that the district attorney mentioned it in his opening statement and did not offer it in evidence does not supply a sound predicate for concluding that appellant sustained injury thereby. Albeit, we know of no rule of law which requires that the State offer all evidence referred to by the prosecutor in his opening statement or any jurisprudence holding that the accused necessarily suffers prejudice if he does. not.[3] Quite the contrary, it would be more: *45 logical and reasonable to conclude that the failure or inability of the State to elicit any evidence outlined in the opening statement redounds to the advantage and benefit of the accused.
Nor does the circumstance that the jury remained in the courtroom, at the time that the prosecution initially attempted to lay the foundation for the admission of the alleged statement, afford any basis for a finding that prejudice resulted to appellant — for, aside from all other factors to which we have above referred, the'failure of defense counsel to take advantage of the judge’s offer to withdraw the jury at the time this' evidence was being elicited constituted an acquiescence in the procedure, barring appellant’s subsequent protest.[4]
As above pointed out, since the statement was never offered in evidence, Bill No. 10, which was addressed to the overruling of counsel’s protest against permitting the State to offer additional evidence in an attempt to lay the foundation for its admission, is not substantial. Indeed, we think it pertinent to observe that, aside from all other considerations, the alleged statement of appellant was of relatively minor importance to the case, even though it constituted an admission of the homicide, for the reason that appellant at no time denied that he had killed Lewis; he admitted it, pleading that he was insane at the time and, when on the witness stand, asserted that he acted in self-defense.
Bill No. 11, which was taken to the overruling of a motion for a new trial, and Bill No. 12, reserved to the overruling of a motion in arrest of judgment, are based upon the alleged errors committed by the judge in not sustaining the points raised in the other bills hereinabove *47 discussed and decided. Therefore, these bills present nothing for review.
The conviction and sentence are affirmed.

. Tlie judge said: “It is true that he did have a serious sinus operation at Charity in New Orleans, the latter part of December, 1952, but there was no blow proved that might have caused it, and the operation seems to Rave been entirely successful, as shown' by the hospital report produced in court”.

. The rules of law applicable to the introduction of confessions in evidence do not pertain to the reception of admissions not involving the existence of criminal intent. See Article 454 of the Code of Criminal Procedure, LSA-R.S. 15:454; State v. Pieton, 51 La.Ann. 624, 25 So. 375 and State v. Terrell, 175 La. 758, 144 So. 488.

. Insofar as confessions are concerned, the case nearest in point is that of State v. Cannon, 184 La. 514, 166 So. 485. There, the district attorney read the confession he proposed to offer on the trial of the case to the jury in his opening statement. Defense counsel, objected. This court refused to reverse the-overruling of the objection stating that,. *45 since it was shown that the confession was free and voluntary and, therefore, admissible, defendant was not prejudiced by the reading of it to the jury in the opening statement. However, it was observed that, if the confession had been excluded, reversible error would have been committed. The case at bar is distinguishable from that matter on the ground, among others, that it is not here contended that the district attorney read the alleged statement to the jury.

. In support of this Bill (No. 9), counsel .for appellant rely-on a'statement in the opinion of State v. Green, 221 Ba. 713, 60 So.2d 208, to the effect that it is the better practice to withdraw the jury while the foundation for the reception of the confession in evidence is being laid because the judge would be required to grant a mistrial if, after the jury heard the State’s evidence, the confession was ruled inadmissible. This remark was predicated on the assumed premise that, in testing whether the confession was voluntary, portions of it would necessarily be referred to in the presence of the jury and, if the jury heard any part of it, a new trial would have to be granted if’ the confession was inadmissible. But, of course, the burden of showing *47 injury is upon tile defendant. In the case at bar, appellant does not claim that any part of the statement, if it was a confession, was heard by the jury.