FOURNET, Chief Justice.
 

 The appellants, Alfred Thomas Faciane and Johnny McMiller, having been convicted on an indictment charging them jointly with Elias Cyprian
 
 [1]
 
 with
 
 violating
 
 Article 30 of the Louisiana Criminal Code (R'.S. 14:30), in that they did “wilfully and feloniously and of their malice aforethought kill and murder Rudolph Berkley Hano,” and sentenced to die in the electric chair, prosecute this appeal, relying for the reversal thereon on a number of errors allegedly committed during the trial to which timely objection was made and bills perfected.
 
 [2]
 

 According to the record Alfred Thomas Faciane, Johnny McMiller, and Elias Cyprian, together with Alfred’s brother Milton
 
 [3]
 
 went to Uneedas, Louisiana, to rob a country store owned and operated by Ru
 
 *1037
 
 dolph Hano, father of the deceased. During the course thereof, the hoy was shot and killed by Alfred Faciane as he begged for his life, Cyprian, at the time, being outside in the get-away truck as a lookout while the other three entered the store.
 

 The first bill of exceptions reserved on behalf of both appellants is based on the trial judge’s denial of their motion for a change of venue.
 
 [4]
 
 Counsel argued, both orally and in brief, that it was impossible for the accused to secure an unbiased jury and to have a fair and impartial trial inasmuch as public feeling against them was at a fever pitch over what counsel term in brief “so horrible a crime,” requiring removal of the accused from the parish for safekeeping, and particularly so since the accused were members of the negroid race, the deceased a thirteen year old white hoy, and the “holdup” occurred in a white man’s store. Counsel point to the large number of jurors allegedly excused for cause as evidence of the bias of the jury. It is contended, additionally, that the news coverage and articles running in the local paper were calculated to stir up widespread public resentment and antagonism.
 

 The burden of establishing by legal evidence that applicant could not secure a fair trial in the parish where the indictment is laid rests with the applicant. 56 Am.Jur. 68, Section 68, verbo “Venue;” State v. Rini, 153 La. 57, 95 So. 400, 404; and State v. Roberson, 159 La. 562, 105 So. 621. And the test is not, as claimed by counsel but, rather, as pointed out in the Rini case: “Can there be secured with reasonable certainty from the body of such citizens, with the use of the safeguards of the law, a jury whose members will be able to try the case upon the law and evidence adduced on the trial, uninfluenced by what they may have heard of the matter, and who will give the accused the full benefit of any reasonable doubt which may arise from either the evidence or the lack of it?” See, also, State v. Ford, 37 La.Ann. 443. Furthermore, the power to grant a change of venue is to be exercised with caution and always rests in the sound discretion of the trial judge whose ruling denying the motion is not reversible error and will not be disturbed unless it affirmatively appears from the evidence that his ruling was unfair and a clear abuse of judicial discretion. See, State v. Powell, 109 La. 727, 33 So. 748; State v. Roberson, 159 La. 562, 105 So. 621; State v. Collier, 161 La. 856, 109 So. 516; State v. Washington, 207 La. 849, 22 So.2d 193; State v. Pearson, 224 La. 393, 69 So.2d 512; State v. Johnson, 226 La. 30, 74 So.2d 402; State v. Swails, 226 La. 441, 76 So.2d 523, certio
 
 *1039
 
 rari denied 348 U.S. 983, 75 S.Ct. 574, 99 L.Ed. 765, and the authorities therein cited.
 

 A review of the record discloses no abuse of discretion on the part of the trial judge in refusing the change of venue. The defendant Faciane totally failed to carry the burden of establishing local prejudice, as did McMiller, for we find no evidence of any probative value to support their motions. In an effort to establish this claim five witnesses from various parts of the parish were produced — a carpenter, cafe owner, restaurant worker, service station attendant, and optometrist — and while they testified they heard the crime discussed in a general way, they knew of no antagonistic feelings or prejudice against the defendants, all stating unequivocally they felt the accused could receive a fair and impartial trial in the parish. Indeed, they all testified unhesitatingly they could personally serve on such a jury if called and render a just verdict. Counsel representing Faciane, apparently realizing the failure to carry the burden of establishing local prejudice has not, in argument, either orally or in brief, mentioned the testimony of these five defense witnesses. Instead, his attempt to have this, ruling reversed is limited to an effort to make light of the testimony offered on behalf of the state,
 
 [5]
 
 asserting it evidences prejudice on its face since “such complacence about the commission of so horrible a crime * * * could not be genuine.”
 

 It is true, as contended by counsel, that the accused was placed in a jail in Baton Rouge immediately after the commission of the offense, but we find the record fully corroborates the trial judge’s per curiam wherein he advises that they only remained at “Baton Rouge from March 26th until April 25th when they were arraigned. Since that time they have been kept in the parish prison at Amite with no hostile demonstrations of any kind and no attempt at any mob violence. The deputy sheriff testified that this was a usual procedure for men charged with capital offenses because of safety reasons. * * * The trial lasted a week and during that time there was no incident of violence or prejudice in the court room or on the outside. The jury was obtained without calling more than the normal number of talesmen for such a case.”
 

 With respect to the news coverage, “Newspaper articles * * * are not
 
 *1041
 
 in themselves sufficient evidence of the existence of such prejudice as will justify a change, unless public hostility has been so aroused thereby that it is improbable that a fair trial can be had.” 16 Corpus Juris 206, Section 309; 22 C.J.S. Criminal Law § 196. As above demonstrated, the appellants failed to establish that such public hostility had been aroused. See, also, State v. Rini, 153 La. 57, 95 So. 400; State v. Roberson, 159 La. 562, 105 So. 621; and State v. Swails, 226 La. 441, 76 So.2d 523.
 

 Bills of Exceptions Nos. 2, 3, 4, 5, 6, and 12, reserved by the appellant Faciane, embrace matters growing out of and connected with the appointment of a lunacy commission and will be treated together.
 

 It appears the trial judge, on June 14, 1956, some three months after the commission of the crime, appointed a lunacy commission
 
 [6]
 
 composed of the parish coroner, Dr. L. L. Ricks, and Drs. A. L. Lewis and C. E. Sturm — the former is a general practitioner in the locality and the latter was at the time clinical director and acting superintendent of the East Louisiana State Hospital for the mentally ill — to inquire into the mental condition of the accused at the present time and also at the time of the commission of the crime. He ordered them to report their findings within 30 days. On July 12, 1956, the commission addressed a report to the judge stating, in effect, that in their opinion the accused was normal mentally, but, in an abundance of precaution, and in order that he might be given every benefit of the doubt, recommended that he be sent to the Louisiana State Hospital for the mentally ill for observation and diagnosis for a period not to exceed 30 days.
 

 Accordingly, the accused, on the order of the judge, was committed to the hospital for observation, examination, and tests by the medical staff, and, on August 2, 1956, Dr. Sturm, as clinical director, and Dr. C. J. Addison, as senior psychiatrist and criminologist of the hospital, addressed a letter to the judge in which they stated: “After examinations, tests, observation and interviews he (Faciane) was presented to our Medical Staff on August 2, 1956, and the staff agreed that this man is not insane at this time, that this man knows the difference between right and wrong, that
 
 *1043
 
 he knows the usual and natural consequences of his words and acts and that he is able to assist counsel in his defense.” (Brackets added.)
 

 The trial judge then set September 6, 1956, as the day on which he would conduct the hearing to determine the present mental capacity of the accused. On that day Dr. Lewis, a member of the commission, was absent, and the hearing was, upon motion of counsel, continued to October 4, the judge, in counsel’s presence and in open court, ordering that summons issue commanding all three members of the commission' and also Dr. Addison to be present on' that day, counsel representing Faciane then stating in open court he would bring his own witnesses with him at that time: '
 

 Bill of Exceptions No. 2 was reserved when the trial judge overruled defense motion to have the testimony of Dr. Lewis stricken from the record and disregarded during the October 4 hearing and that no further testimony be taken, contending the accused had not been kept under observation by the commission and it had not filed a report as required by R.S. 15:269.
 
 [7]
 
 Predicated on this same contention is Bill of Exceptions No. 3, reserved when Dr. Sturm, another member of the commission, was allowed to testify over defense objection, and Bill of Exceptions No. 12, reserved when these same two witnesses were allowed to testify with respect to Faciane’s mental capacity at the time of the commission of the crime during the trial before the jury, he having filed a plea of not guilty by reason of insanity.
 
 [8]
 
 Bill of Exceptions No. 4 was reserved when the trial judge ruled admissible in evidence the document addressed to him dated August 2, 1956, counsel’s objection being that it was
 
 not
 
 signed by all three members of the commission. The fifth bill was reserved when the trial judge overruled Faciane’s motion that his counsel be permitted to question all members of the medical staff of the hospital who had examined the accused when he was under observation at that institution; and when the judge, at the close of the October 4 hearing, overruled the plea of present insanity, the sixth bill was reserved.
 

 From a review of the per curiam the trial judge has attached to each of these
 
 *1045
 
 bills we think his appreciation of the case in so far as the issues raised in them is concerned may be fairly stated to be that he considered the document of July 12 to be the official report of the commission and thus prima facie evidence of its findings; that he committed accused for further examination and diagnosis as suggested by the commission so that he might be given every benefit of the doubt and also that he (the judge) might be in a better position to reach a just conclusion after a full hearing on the plea of present insanity; that although counsel was furnished with a copy of this report, he raised no objection thereto at the time, nor did he object to the suggestion contained therein, to the commitment to the state hospital under that suggestion, and, further, did not object to the results reported by the hospital staff as reflected by the document of August 2; that on the date fixed for the hearing, September 6, still making no objection to the report, the commitment, or the results obtained as the result thereof, counsel secured a continuance on the ground that “Dr. A. L. Lewis, one of the commission appointed by the court to examine Alfred Thomas Faciane, was out of the state,” the judge then in open court, and in presence of counsel, summoning all members of the commission as well as Dr. Addison to be present at the October 4 hearing, while counsel representing Faciane made no request that any of the other members of th.e hospital staff who participated in the examination be summoned, but, rather, stated in open court that “he would bring his witness with him on said date.”
 

 The judge advises further that on the day of the hearing counsel proceeded to trial without raising any objection to the report, the commitment, and the findings of the staff, his objection to the report not being made until completion of the examination and cross-examination of Dr. Lewis, when, for the first time, he contended the mandatory provisions of R.S. IS :269 had not been complied with in that the accused had not been kept under observation and no report had been furnished by the commission as required therein. He did not object to the report of August 2 until the close of Dr. Sturm’s testimony, and his request for examination of all staff members who participated in the hospital examination did not come until the very close of the hearing, at which time the trial judge ruled he had no right to such testimony as a matter of law and that if counsel felt this testimony was essential, it was his duty to have these experts subpoenaed, which he had not done, despite the fact he stated in open court on September 6 he would bring his own witnesses; in fact, he did not even call to the stand Faciane’s own expert, upon whose recommendation the lunacy commission had
 
 *1047
 
 been appointed, though he was present at the time.
 
 [9]
 

 The judge not only considered the document of August 2 important to assist him in arriving at a conclusion as to the mental capacity of the accused, but also admissible in evidence in connection with the testimony of Drs. Sturm and Addison, who had signed it. And from the showing made during the hearing he felt he had no alternative but to conclude the accused was sane and to order him to trial, the judge being, under the law, the exclusive judge of the sufficiency and credibility of the evidence introduced to establish mental capacity under a plea of present insanity.
 

 It is apt to observe that counsel is not here contending Faciane is insane or in any manner unable to understand the proceedings against him and to assist counsel
 
 in'
 
 the preparation of his defense. Instead) he is relying on technicalities in the procedure followed by the commission in conducting their examination of Faciane and reporting to’ the judge, their sole complaint in this respect, as above pointed out, being that the commission failed to keep t-he accused under observation and did not make a report as required by R.S. 15 :269.
 

 • • [9] 'The contention of counsel that the áccused was' not kept under observation and examined as required by law is clearly without merit. There is nothing in the statute
 
 [10]
 
 requiring that an accused be kept under constant observation for any fixed period of time, and the legislature has not therein attempted to dictate to these experts the manner and method to be employed by them
 
 in
 
 conducting their examination, undoubtedly feeling, as do we, that they are eminently better qualified to know just exactly how to best carry out their duty in this respect as the particular facts of each case may warrant. And once the commission’s investigation as to the sanity of the accused has been completed, the only duty imposed upon its members by the statute is that “They shall within thirty days make their reports in writing to the presiding judge,” which was done in this case. The fact that the commission in an abundance of precaution recommended the accused be subjected to further examination by the staff of the state hospital for the mentally ill does not detract from the fact this was the report of the commission. The judge was under no obligation to accede to this recommendation. The fact that he did so speaks eloquently of his fairness and of his desire to give the accused every opportunity to establish his contention.
 

 
 *1049
 
 The record reveals the trial judge, exercising the discretion vested in him by R.S. 15:267
 
 [11]
 
 appointed a commission to inquire into the mental condition of the accused, following precisely the procedure set out in such cases under the law, and, in accordance with these provisions the commission made its written report within 30 days. This report was made accessible to the district attorney and to the accused and the case was duly fixed for hearing on September 6, 1956. On that day, because a member of the commission was not present, the defendant was granted a continuance to October 4 so that counsel might have the benefit of all testimony he then stated he needed. At the hearing all members of the commission, as well as Dr. Addison, the head psychiatrist of the hospital, were present, were examined by the judge, the state, and tendered to counsel for the defense, who subjected them to searching cross-examination.
 

 We readily concur with the trial judge’s ruling under Bill of Exceptions No. 4 that the document of August 2 was properly admitted in evidence in connection with the testimony of its authors, and in his conclusion that the accused was not entitled, as a matter of right, to have in court all of the experts at the state hospital who participated in the examination of Faciane, as contended under Bill of Exceptions No. 5. A mere reference to the pertinent law, reproduced above in Footnote No. 11, will disclose the trial judge
 
 may,
 
 if in his discretion he feels there is reasonable grounds to justify an investigation into the present mental condition of the accused, appoint two physicians to examine him and to testify at the hearing. Continuing the statute stipulates that
 
 “Other evidence regarding the defendant’s mental condition may be introduced at the hearing by either party."
 
 If Faciane’s counsel had been sincere in feeling the testimony of the members of the medical staff was necessary to establish the present insanity of his client, he was under a duty to avail himself of this italicized portion of the statute and either have these men present, as he said he would when he sought the continuance on September 6, or else have them subpoenaed
 
 *1051
 
 during the intervening month. At least he should have made some showing of the importance of such testimony before proceeding with the October 4 hearing, and have then secured a further continuance until these experts could be present. (The emphasis has been supplied.)
 

 The final hill reserved in this connection that has been briefed (Bill of Exceptions No. 6) embraces an objection made when the trial judge overruled the plea of present insanity. Under our law the judge is given the exclusive responsibility
 
 [12]
 
 of ultimately determining the mental capacity of an accused under a plea of present insanity, subject to review only by this court, and the jurisprudence is to' the effect that anyone asserting an abuse of that discretion has the burden of establishing it. State v. Scott, 49 La.Ann. 253, 21 So. 271, 36 L.R.A. 721; State v. Johnston, 118 La. 276, 42 So. 935; State v. Seminary, 165 La. 67, 115 So. 370; State v. Johnson, 226 La. 30, 74 So.2d 402; and State v. Chinn, 229 La. 984, 87 So.2d 315. As above pointed out, counsel did not introduce one single witness, either lay or expert, at the October 4 hearing to establish the present insanity of Faciane, not even the expert upon whose recommendation the commission had originally been appointed to examine into his mental capacity. In fact, counsel, as above pointed out, is not now arguing that the trial judge abused his discretion in this matter, but has, instead, predicated this bill on the same basis that the other bills now being treated are predicated on, i. e., as set out in brief, that the record was in no condition to pass on this plea since “the lunacy commission had not filed its report in writing as required by law, had not kept the defendant under observation as is also required by law and that appellant was denied the right to cross-examine all of the experts who participated in the examination as to his mental condition,” matters we have just disposed of as being untenable.
 

 The next bill, Bill of Exceptions No. 7 reserved by Faciane and Bill of Exceptions No. 2 reserved by McMiller, questions the judge’s ruling in disregarding defense counsel’s challenge of prospective juror James J. McLaughlin for cause and holding him to be competent for service, it being their contention this constituted prejudicial error since they were compelled to exhaust all peremptory challenges before the jury was finally selected. These hypothetical questions were confusing and involved. However, they were apparently intended to elicit from the juror an answer as to whether he would convict an accused upon the mere fact that he went to the scene of the crime with the others knowing what they intended to do but making no effort to stop them since he had no interest in the matter.
 

 
 *1053
 
 The questions were highly improper and should not have been allowed for it is the settled jurisprudence of this court “that questions which have for their evident purpose to have jurors indicate in advance what their decision will be under a certain state of facts are not pertinent.” State v. Morris, 222 La. 480, 62 So.2d 649, 650. See, also State v. Henry, 197 La. 999, 3 So.2d 104, and State v. Smith, 216 La. 1041, 45 So.2d 617. In any event, it is clear from the note of evidence attached to this bill that although the prospective juror was obviously confused by the manner in which the questions were phrased, when his examination as a whole is considered that he was fully qualified to serve, as the judge concluded. His discretionary ruling in this respect will not, therefore, he disturbed. See, State v. Collier, 161 La. 856, 109 So. 516.
 

 Faciane’s Bill of Exceptions No. 8 was reserved when the trial judge refused to instruct the jury to disregard a portion of the opening statement made by the district attorney,
 
 [13]
 
 and his Bill of Exceptions No. 9 was reserved when he overruled counsel’s objection to a certain portion of the testimony given by the witness Hano, father of the deceased.
 
 [14]
 
 It is counsel’s
 
 *1055
 
 contention that inasmuch as the state, in answer to his motion, elected
 
 [15]
 
 to try the accused under the second subsection of R.S. 14:30
 
 [16]
 
 any statement that the murder of the young Hano boy by Faciane was premeditated was inadmissible.
 

 In disposing of this contention the trial judge in his per curiam to these bills says he considered the opening statement proper and the testimony of Mr. Hano competent within the purview of the second subsection of R.S. 14:30 defining the crime of murder, and also as a part of the res gestae, pointing out that the district attorney did not read subsection one to the jury in compliance with counsel’s request, and that nowhere either in the opening statement, or in the evidence for that matter, did the district attorney ever contend Faciane entered the store with the specific intent of shooting the young Hano boy, but, instead, that Faciane, together with his accomplices, went there to commit the crime of robbery and that Faciane, “being armed was obviously prepared to shoot anyone who stood in his way.” He advises further that the portion of Hano’s testimony objected to concerned facts that were but the chain of events leading up to the shooting of the deceased, which happened after the accused Faciane had drawn his pistol on Rudolph Hano and said: “This is a stickup.”
 

 Clearly there is no merit to either of these bills. The matters complained of were but facts that detailed the murder of young Hano while Faciane and his accomplices were engaged in the perpetration of a robbery of the store. They were not intended to, nor did they in fact, evidence any intention on the part of the district attorney to establish that the murder of the Hano boy was premeditated.
 

 Faciane’s Bill of Exceptions No. 10 was reserved to the ruling of the trial judge admitting in evidence, over counsel’s objection, the written statement of his co-defendants, Cyprian and McMiller, given after the termination of the conspiracy and out of his presence. McMiller’s third bill is also levelled at the admission in evidence of the Cyprian statement. It is argued these statements were self-serving declarations only, intended, as to the one making them, to be exculpatory but in
 
 *1057
 
 culpatory to the other defendants, and could have been admitted in evidence for no other reason than to prejudice the jury against them.
 

 The judge did not commit error in this ruling. A mere reference to these statements will show that while some portions are exculpatory in nature, they also contain inculpatory facts that trend to establish the guilt of their respective authors, and, under our law, were therefore properly admissible as to them, the judge having promptly and properly instructed the jury to disregard them as to any of the other co-defendants. Under such instructions they were admissible as additional evidence tending to establish the guilt or innocence of their respective authors, the weight to be given them being a matter for the jury alone to determine. See, State v. Johnson, 47 La.Ann. 1225, 17 So. 789; State v. Sims, 106 La. 453, 31 So. 71; State v. Livsey, 190 La. 474, 182 So. 576; and State v. Roshto, 222 La. 185, 62 So.2d 263.
 

 Bill of Exceptions No. 11 reserved on behalf of Faciane is levelled at the trial judge’s refusal to order a mistrial by reason of the inclusion in the McMiller statement of a portion
 
 [17]
 
 objected to by counsel on the ground it tended to place Faciane’s reputation at issue although he did not at the time, or later, take the stand.
 

 In the first place, only the imagination of counsel could read into this portion of McMiller’s statement an attack upon the character of the accused. Secondly, as pointed out in our discussion of the two previous bills, the statement was admissible in evidence; consequently, once admissible, it could not be taken in parts but had to be introduced as a whole. RS 15:450. Further, the judge, as above pointed out, properly admonished the jury not to consider anything therein contained as being admissible against anyone other than McMiller, its author.
 

 Faciane’s thirteenth bill and McMiller’s fourth were reserved to the trial judge’s ruling denying their motions for a new trial and present nothing for our consideration inasmuch as these motions were predicated upon the errors just disposed of.
 

 This leaves as the only matter not disposed of McMiller’s motion for a severance, which forms a part of his first bill of exceptions and was not treated in connection therewith above. The trial judge did not
 
 *1059
 
 give us the benefit of his views on this motion, but we find counsel’s argument under this bill is very short in brief, being as follows: “The motion for severance was based upon antagonistic defenses and the fact that, without severance, appellant could not call one of his co-defendants as a witness on his behalf. * * * The defenses were antagonistic in that the statement of Faciane incriminated McMiller and it was known the state intended to use Faciane’s statement as evidence. * * ”
 

 According to the law of this state and the overwhelming jurisprudence thereunder, an accused is not entitled to a severance as a matter of right and the granting or refusal of his motion therefor is one that rests entirely within the discretion of the trial judge, his ruling remaining undisturbed unless it is established to be arbitrary by the accused. Article 316 of the Code of Criminal Procedure (RS 15:316); State v. Gournet, 43 La.Ann. 197, 9 So. 436; State v. Gresham, 132 La. 594, 61 So. 681; State v. Hill, 160 La. 579, 107 So. 433; State v. Livsey, 190 La. 474, 182 So. 576; State v. Labat, 226 La. 201, 75 So.2d 333, affirmed 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83, and the authorities therein cited.
 

 It is obvious from the argument in brief above quoted that the only reason advanced as the basis for the contention that the defenses were antagonistic is' that the statement made by Faciane incriminated McMill'er and it was known the state would introduce this statement in advance. In support of this contention counsel cite State v. Taylor, 45 La.Ann. 605, 12 So. 927, and State v. Desroche, 47 La.Ann. 651, 17 So. 209. However, this cannot serve as the basis of reversible prejudicial error for the record discloses this statement was never in fact introduced in evidence. The other ground urged for the granting of this motion is that the accused desired to call his co-defendants as witnesses in his behalf, reliance being placed on the cases of State v. Angel, 52 La.Ann. 485, 27 So. 214, and State v. Sims, 106 La. 453, 31 So. 71. Yet it has been squarely held by this court that an accused is not entitled to a severance on this ground alone (State v. Phenix, 134 La. 329, 64 So. 129; State v. La Rocca, 168 La. 204, 121 So. 744; State v. Graziani, 168 La. 297, 121 So. 872), the authorities relied on by counsel being explained and distinguished in the La Rocca case. In any event, the record discloses McMiller did not call either Cyprian' 'or Faciane to the stand. Counsel has thus clearly failed to carry the burden of establishing the judge abused his discretion in this respect, and, further, that this abuse resulted in reversible error. See, Article 557 of the Code of Criminal Procedure, RS 15:557.
 

 For the reasons assigned the convictions and sentences appealed from are affirmed.
 

 [1]
 

 . Cyprian, found guilty as charged without capital punishment, did not appeal.
 

 [2]
 

 . Faciane reserved 13 bills and McMiller reserved 4. In their first bills both urge the trial judge erred in refusing them a change of venue; additionally, McMiller urges he was prejudicially denied a severance. MeMiller’s second and Faeiane’s seventh bills contest the judge’s ruling that one of the jurors was competent. MeMiller’s third and Faciane’s tenth and eleventh bills are levelled at the admission in evidence of written statements made by their co-defendants. MeMiller’s fourth and Faciane’s thirteenth bills question the action of the court in denying them a new trial. Faciane’s bills Nos. 2, 3, 4, 5, 6, and 12 embrace matters growing out of and connected with the appointment of a commission to examine into his sanity. And Faciane’s seventh and eighth bills point to alleged errors in certain portions of the opening statement of the district attorney and the testimony of the father of the deceased.
 

 [3]
 

 . Milton Faciane was killed by the father of the deceased during the affray.
 

 [4]
 

 . The phase of McMiller’s first hill touching on his motion for a severance will be discussed later.
 

 [5]
 

 . We learn from the trial judge’s per curiam that “some nine witnesses including the Sheriff of Tangipahoa parish, heads of two hanking institutions, mayors of five incorporated towns in Tangipahoa parish, and the chief deputy sheriff of the said parish,” were called to the stand by the state. All testified there had been no “hostile demonstrations or outward show or attempts” of violence at any time subsequent to the crime; that in their opinion the accused could be tried fairly and impartially in the parish.
 

 [6]
 

 . To this motion was attached the recommendation of Dr. Alfred T. Butterworth, employed on behalf of Faciane, who is assertedly an expert psychiatrist of New Orleans. This recommendation is as follows: “The mental status examination and history pointed toward a schizophrenic diagnosis. He shows some persecutory delusions, bizarre ideas and demonstrates an inappropriate affect.
 
 It is possible,
 
 of course,
 
 that this man has been psychotic at some time
 
 and I would strongly recommend the appointment of a lunacy commission to determine bis responsibility in this alleged crime.” (The emphasis has been supplied.)
 

 [7]
 

 . The pertinent part of this provision is as follows: “The accused shall be kept under observation by the physicians and they shall proceed with an investigation into the sanity of the accused and they shall have free access to the accused at all reasonable times and shall have full power and authority to summon witnesses and to enforce their attendance. They shall within thirty days make their reports in writing to the presiding judge. Their findings shall constitute the report of the examination and the report shall be accessible to the district attorney and to the attorney for the accused.”
 

 [8]
 

 . This bill is apparently abandoned as it is not argued here, either orally or in brief.
 

 [9]
 

 . This expert did testify at the trial be- ■ fore the jury, and the jury, in finding Faciane sane at the time of the com- : mission of the crime, obviously felt he was in error in the opinion expressed in his recommendation that such a commission be appointed.
 

 [10]
 

 . The pertinent portion of this provision is set out above in Footnote
 
 No. 7.
 

 [11]
 

 . The pertinent portion of RS 15:267 provides: “If before or during the trial the court has reasonable ground to believe that the defendant against whom an indictment has been found or information filed is insane or mentally defective to the extent that the defendant is unable to understand the proceedings against him or to assist in his defense, the court shall immediately fix a time for a hearing to determine the defendant’s mental condition. The court
 
 may
 
 appoint two distinterested physicians to examine the defendant with regard to his present mental condition and to testify at the hearing. Other evidence regarding the defendant’s mental condition may be introduced at the hearing by either party. If the court, after' the hearing, decides that the defendant is able tp understand the proceedings and to assist in his defense, it shall proceed with the trial. * * * ” (The emphasis has been supplied.) '
 

 [12]
 

 . Set out above in Footnote 11.
 

 [13]
 

 . The portion objected to is as follows: “ * * * and we will also show you that Mr. Hano and Milton Faciane got into a scuffle and that about that time when the scuffle was going on in there Alfred Thomas Faciane walked to where the deceased was and grabbed him by the arm and put a gun on him and pulled him out; that during this scuffle Mr. Hano and Milton Faciane wrestled around into the little store room on the side and that during this time Anthony Mansfield was in the back of the living quarters. Having heard the commotion he came up and as he walked into the store proper Alfred Thomas Faciane had the gun pointed at the deceased. We will show you that the deceased threw up his hands and said ‘Don’t shoot.’ We will also show you that Alfred Thomas Faciane did shoot * *
 

 [14]
 

 . The portion of Hano’s testimony objected to is an elaboration on the events as they transpired in the store on the day of the shooting. While rambling and somewhat hard to follow, the pertinent portion seems to be: “ * * * in hopes that * * * I might be able to resist in someway to try to tag him before he — which would cause him to forget about my child momentarily and follow in after me, and hoping that I could in some way get Milton aloose from me and try to stop the man with the gun. But as I turned to my left backing up trying to get out of the door facing of that grocery stock entrance * * * seeing he still had his left arm around my child’s neck with the muzzle of the large automatic weapon in his face, the muzzle of it— I couldn’t see whether it was pressing' against it * * * Milton hollered to Alfred a second by saying ‘Hurry up come shoot him quick’ and that made me feel that certainly waiting any longer or anything wasn’t going to do any good so I used my judgment and trusted in God to help me to use my head and with physical strength so that X may,', get that gun aloose from Milton and * * * So I desperately struggled with Milton and as I desperately struggled and as that gun was in the motion that I intended to put it before shooting Milton hollored again and said ‘He is going to shoot me’ * * * all I can remember from that point * * * is that
 
 *1055
 
 I know I liad definitely shot that 32 Smith and Wesson special * *
 

 [15]
 

 . The jurisprudence is that the state capnot be required to elect under which portion of a statute it will proceed in the trial of a criminal case. See, State v. Prince, 216 La. 989, 45 So. 366; State v. Jackson, 227 La. 642, 80 So.2d 105; State v. Rowan, 233 La. 284, 96 So.2d 569.
 

 [16]
 

 . The pertinent portion reads: “Murder is the killing of a human being, (1) When the offender has a specific intent to kill or to inflict great bodily harm; or (2) When the offender is engaged in the perpetration or attempted perpetration 0f # * * armed robbery * * * even though he
 
 has no intent to
 
 kill.”
 

 [17]
 

 . The portion objected to is as follows:
 

 “On Monday morning around noon time I was at the Blue Goose on Gentilly Highway in New Orleans and started out to my truck when someone called to me and said someone wanted to see me. Alfred Faciane was in a telephone booth and came out behind my truck and we were talking when he saw a police car come and he went through the alley telling me that he was hot. About one-hour later I went to his house and told them I was going * *